248 So.2d 576

**RESERVE INSURANCE COMPANY,**
a Corporation

v.

**ALLSTATE INSURANCE COMPANY,**
a Corporation.

8 Div. 37.

Court of Civil Appeals of Alabama.

Feb. 3, 1971.

Rehearing Denied Feb. 24, 1971.

Baker, McDaniel, Hall & Parsons, Birmingham, for appellant.

No brief for appellee.

BRADLEY, Judge.

Laudrey E. Gullion was the driver of an automobile which was involved in a collision with several other automobiles in Huntsville, Alabama on November 6, 1966. Gullion had two policies of automobile insurance; one with Allstate Insurance Company with limits of 10/40/5, and one with Reserve Insurance Company with limits of 10/20/1.

All but two of the claims made against Gullion were settled by his insurers without suit being filed.

The claims that did not go to suit were settled by the two insurers paying half of each settlement, i. e., 50% was contributed by Allstate and 50% by Reserve.

Claims that resulted in court action were those filed by Mr. and Mrs. Howard Doyle. Mrs. Doyle filed an action for $100,000 and Mr. Doyle filed an action for $123,000. Judgment was rendered after trial for Mrs. Doyle in the amount of $7,500. Shortly thereafter, the two insurers settled with Mr. Doyle for $9,000.

Allstate contended that Reserve had obligated itself to pay 50% of the Doyle judgments, and Reserve contended that it was only required to pay one-third of the judgments, with Allstate paying two-thirds thereof, for the reason that Allstate's total bodily injury limit was $40,000 and Reserve's limit was $20,000, making a total of $60,000, and when pro-rated this would result in a ⅔-⅓ contribution.

The Doyle judgments were satisfied with Allstate paying two-thirds and Reserve one-third.

Allstate thereafter filed an action against Reserve claiming $2,853.19 (the difference between one-third and one-half of the judgments, plus court costs.)

The case was tried before a jury on May 11 and May 12, 1970, with a verdict being returned for defendant, Reserve Insurance Company.

On May 15, 1970 Allstate filed a motion for new trial, which was granted by the trial court on June 30, 1970. The order granting the new trial did not contain any ground or reason for its issuance.

Reserve perfected an appeal to this court from said order on July 21, 1970, assigning as error the granting of the new trial.

■ The rule of review in a case of this kind is that when the trial court grants a motion for a new trial and does not state a ground or reason for its decision, a presumption will be indulged by the reviewing court that the trial court concluded that the verdict was contrary to the great preponderance of the evidence, or that the verdict was unjust in the light of the evidence. Vol. 2A, Alabama Digest Appeal and Error ☞933(4).

■ The Supreme Court has also said that, "On appeal this court will not reverse an order granting a new trial, 'unless the evidence plainly and palpably supports the verdict' (Cobb v. Malone, 92 Ala. 630, 9 So. 738), meaning, as we think, that this court will not reverse in such case, unless the evidence adduced in the trial court plainly and palpably shows that the trial court was in error." Parker v. Hayes Lumber Co., 221 Ala. 73, 127 So. 504; Tyler v. Doctors Hospital, 274 Ala. 577, 150 So.2d 753.

Allstate and Reserve covered one Laudrey E. Gullion under policies of automobile liability insurance for the accident which occurred November 6, 1966 in Huntsville, Alabama.

Numerous persons for both companies handled the insurance, including Mr. Reader and Mr. Blalock of Allstate and Mr. Bender and Mr. Healey of Reserve.

In addition to the aforementioned people, just after the accident, Reserve employed Cecil Teague Adjusters to make an investigation for them. Further, in the beginning, Huntsville Claims Service, an independent adjusting firm, was representing Allstate.

A number of claims against Gullion resulted from the accident, and all but two (Mr. and Mrs. Doyle's claims) were settled without incident, with Allstate and Reserve each contributing 50%.

On March 10, 1967, Mr. Reader, Allstate's casualty supervisor in Birmingham, wrote Reserve asking confirmation of an alleged 50% contribution offer made by Cecil Teague Adjusters, covering numerous claims arising out of the Gullion accident.

On November 10, 1967 Mr. Blalock wrote Mr. Bender of Reserve, advising him that Allstate had received suit papers and that he (Blalock) had heard nothing since the conversation of October 11, 1967 regarding authority to negotiate.

On December 20, 1967 Allstate received Reserve's letter dated December 15, 1967 signed by Mr. Healey (claim examiner for Reserve), wherein Reserve acknowledged receipt of letter of October 9, 1967 wherein Allstate had stated its liability to be 10/40. Mr. Healey also stated that Allstate was apparently looking forward to a 50% reimbursement from Reserve. However, Mr. Healey went on and stated that Reserve's limits were 10/20 and that it would therefore appear that Reserve would owe one-third and Allstate owe two-thirds.

On February 8, 1968 Allstate received Reserve's letter dated February 6, 1968 signed again by Mr. Healey, stating, "In regards to the above captioned claim [claim #184132] we are agreeing to the 50%. We will also pay 50% of the expenses involved. Please advise."

Mr. Blalock of Allstate testified that the term "claim" (referring to the Hunter and Smith claims) was synonymous with "suit" (referring to the Doyle suits.)

Mr. Blalock, however, admitted that in the letter of February 6, 1968 Reserve did not specifically agree to pay 50% of the Doyle claims as the letter does not make any reference to the Doyles.

Mr. Blalock further admitted that the letter of February 6, 1968 referred to the insured as "Landrey E. Garland" which

was an unknown name. He, however, added that the file number 15T54650, and the account date, 11/6/66, were correct. Mr. Blalock also admitted that after receiving the letter of February 6, 1968, and before the Doyle cases came up for trial and settlement, there was nothing written by Allstate reconfirming the alleged contract or setting out a new contract.

On February 8, 1968 Allstate allegedly wrote back to Reserve to say, "We have previously settled the claim of Mr. Hunter for $844 and request your company to pay their 50%. Please let your draft be forwarded for $442. As to the claims * * * [of Mr. and Mrs. Doyle], we need to know what authorization we have from you to settle these claims."

On April 4, 1968 Allstate wrote State Farm Insurance (which covered the Doyle car) sending them a draft for $1,186.01 for one-half of the car damage. Allstate also indicated that it was spending a similar letter to Reserve requesting it to pay the other half.

On July 15, 1968 Allstate again wrote Reserve, stating that the maximum evaluation of the Doyle cases was for $4,000 and $2,000 on Mr. and Mrs. Doyle respectively, making a total of $6,000 which would come to $3,000 for each company. Allstate then stated, "If you agree and concur with the above, please acknowledge authority for us to settle in this amount (total $6,000) with each splitting 50–50."

On July 31, 1968 Reserve replied that they were extending authority of $3,000 for Reserve's share of settling both Doyle claims. Reserve then stated, "I think if we could get out of it up to $6,000 total, between both of us, we would be well off of the old, aging file." This letter had the insured's name as Garland Lee Gullion, but it had the correct account date and file numbers.

In February 1969 Mrs. Doyle's case was tried and the verdict was $7,500 and within two or three weeks Mr. Doyle's case was settled for $9,000. Reserve paid one-third of the total $16,500.

Mr. Blalock testified that he does not know when Allstate first told Reserve that its liability limits were 10/40, but he states that there is no information in his file that Reserve was erroneously informed of Allstate's coverage.

The only other testimony introduced was the answers of Reserve made to certain interrogatories propounded by Allstate. Therein Reserve stated that any agreement by it to pay 50% of all liability arising out of the accident of November 6, 1966, was made on erroneous coverage information furnished it by Allstate.

Appellant contends that a review of the evidence indicates that the jury was more than justified in finding that Reserve never obligated itself to pay 50% of the Doyle cases; that at most, Reserve only agreed to pay up to $3,000 for settlement of the Doyle cases. Appellant asserts that communications between the two companies at the outset was poor, and mostly by telephone. Further, that several different parties were involved in the claims, making it easy for erroneous coverage information concerning Allstate's policy to be communicated.

■ We think that inasmuch as Reserve in its answer to interrogatories admits to contracting to make 50% contribution *of all claims* arising out of the accident, that in the absence of clear proof of fraud or mistake to avoid a contract, the appellant is bound by his own admission.

■ Appellant also contends that there was no affirmative evidence introduced by Allstate to show when Allstate communicated to Reserve that its liability limits were 10/40. Appellant further says that its letter dated December 15, 1967 shows that the first mention of Allstate's limits in written communication, was by letter dated October 9, 1967, some eleven months after the accident. Similarly, appellant asserts that the letter dated November 10, 1967

shows that the contribution issue was still unsettled as of that date.

Further, appellant submits that the letter of November 10, 1967 made a distinction between "small claims" or claims that were not in suit, and the claims of Mr. and Mrs. Doyle which involved large sums of money.

It is admitted that the letter dated November 10, 1967 uses the term "claim" when referring to the Hunter claim, and the term "suit claim" when referring to other claims, but we think it is also true that Allstate in speaking of 50% contribution referred to losses up to the $20,000 liability limit. We do not believe it would be contended that such a loss is a "small claim."

The next correspondence between the companies was Reserve's letter of February 6, 1968 which Allstate asserts to be the contract. This letter states:

"In regards to the above captioned claim, we are agreeing to the 50%. We will also pay 50% of the expenses involved. Please advise."

Appellant asserts that as no mention is made of the Doyle suits, the jury was more than justified in finding that this letter was an agreement to pay 50% of the "small claims."

Appellant further asserts that on this very day, February 6, 1968, Allstate in a reply letter requesting 50% contribution on the Hunter claim, asked for authorization in connection with the Doyle cases.

Appellant contends that this reply letter shows that the February 6, 1968 contract for 50% contribution applied only to the "small claims."

Finally, appellant contends that the letters dated July 15 and July 31, 1968 show that at most, Reserve only extended authority for settlement on the 50% contribution basis up to and not exceeding $3,000 for settlement of the Doyle cases.

We are not persuaded, however, that appellant's final position plainly and palpably proves that there was no contract as to the Doyle suits, or that there was fraud or mistake in the communications of Allstate's liability limits. Therefore, it is our opinion that the evidence does not plainly and palpably show that the trial court was in error in granting the request for a new trial.

The trial court having committed no reversible error, this case is affirmed.

Affirmed.

## ON REHEARING

Appellant on petition for rehearing asserts that the general presumption indulged in favor of the conclusions of trial judges who see and hear witnesses does not apply in the instant case because there was no material conflict as to whether Reserve contracted to make a fifty percent contribution of "all claims" arising out of and resulting from the accident of November 6, 1966.

Without going further into the evidence and thereby causing possible prejudice in another trial, it suffices to say that the evidence before the court relating to the existence of an agreement, if any, and the extent thereunder, was conflicting. The alleged agreement for contribution is embodied in the oral testimony before the court and the several written communications between the two parties, as well as the written interrogatory.

The evidence as adduced has been considered with due care leading this court to the conclusion that the presumption in favor of the trial judge granting the new trial will be indulged, and this court will not reverse the trial court, as the evidence does not plainly and palpably support the verdict.

Opinion Extended.

Application for rehearing overruled.